UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DANNY ORTEGA, JR.,  CIVIL NO. 15-4116 (JRT/JSM)

    Petitioner,

v.  REPORT AND RECOMMENDATION

STEVE HAMMER,
*Warden, MCF-STW,*

    Respondent.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the undersigned United States Magistrate Judge upon Petitioner Danny Ortega, Jr.'s Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus [Docket No. 1] and Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 3]. The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 363 and Local Rule 72.1.

**I.   FACTUAL BACKGROUND**

Petitioner Danny Ortega, Jr. ("Petitioner") is a prisoner at the Minnesota Correctional Facility – Stillwater. The relevant facts underlying this case, as found by the Minnesota Supreme Court and the record provided by the parties, are as follows.

On February 16, 2008, Troy Ulrich was stabbed to death in a garage at his apartment building in Claremont, Minnesota. State v. Ortega, 798 N.W.2d 59, 62 (Minn. 2011) ("Ortega I"). Petitioner lived with his grandfather in an apartment on the same floor as Ulrich's. Id. Petitioner's girlfriend, Marissa Lane, and father, Danny Ortega Sr., occasionally stayed overnight in Petitioner's apartment. Id.

On February 15, 2008, Petitioner, Ulrich, Lane, and Petitioner's cousins, Anthony and Eric Bermea, were playing cards and drinking alcohol in Petitioner's apartment. Id. Sometime during the evening, an argument broke out between Petitioner and Ulrich. Id. Petitioner retrieved a baseball bat and then a machete and demanded that Ulrich leave the apartment. Id. To avoid further conflict, Ulrich and the Bermea brothers left the apartment, and the three men went to the garage and continued to drink. Id. at 62-63.

Eventually, Ortega Sr. arrived at Petitioner's apartment. Id. at 63. Lane testified that Petitioner spoke with his father and then told Lane they were heading to the garage to confront Ulrich. Id. Petitioner and Ortega Sr. entered the garage through an unlocked door. Id. Ortega Sr. shoved Ulrich and demanded to know if he had a problem with Petitioner. Id. Both Eric and Anthony Bermea attempted to intervene, but Ortega Sr. pushed them aside. Id. Ortega Sr. then began throwing punches at Ulrich, who picked up a metal light stand and hit Ortega Sr. Id. As Ortega Sr. fell to the ground, Petitioner started striking Ulrich with a pair of bolt cutters. Id. Ortega Sr. recovered and resumed hitting Ulrich. Id. Eric and Anthony heard Ulrich yell "He's got a knife," and saw Ortega Sr. make a stabbing motion while Petitioner continued to hit and kick Ulrich. Id. Ulrich died that night as a result of his injuries. Id.

Petitioner asked the Bermeas to help him move Ulrich's body out of the garage, but they refused. Id. Petitioner, Ortega Sr., and Lane attempted to clean up the scene and destroy any incriminating evidence. Id. Appellant then dragged Ulrich's body out of the garage and into the apartment hallway. Id.

On the morning of February 16, 2008, several residents of the apartment building called 911 after discovering Ulrich's body in the hallway. Id. When police arrived at the

scene, the Bermeas spoke with the investigators. Id. at 63-64. Petitioner, Ortega Sr., and Lane were arrested later that day. Id. at 64.

At the police station, Agent Wold of the Bureau of Criminal Investigation (BCA) read Petitioner his Miranda rights, and Petitioner agreed to talk about the incident without the presence of counsel. Id. Petitioner admitted to kicking Ulrich after Ulrich had hit Ortega Sr. with a light stand. Id. However, Petitioner initially denied any knowledge of the stabbing. Id. Ultimately, Petitioner admitted to stabbing Ulrich and told the Agent Wold that Ulrich "kept saying stop stabbing me." Id. at 65.

On February 18, 2008, BCA Investigator Gunderson conducted a second interview of Petitioner, at which Petitioner admitted that he kicked Ulrich in the face and stabbed him at least twice in his side. Id.

A grand jury indicted Petitioner with aiding and abetting first-degree premeditated murder, aiding and abetting first-degree felony murder while committing or attempting to commit a burglary, aiding and abetting second-degree intentional murder, and aiding and abetting second-degree felony murder while committing second-degree assault. Id. at 65 n. 3. Petitioner pleaded not guilty and demanded a jury trial. Id.

Prior to trial, Petitioner filed a motion to suppress statements he had made to BCA agents on February 16, 2008, alleging violations of his rights to remain silent and to have counsel present during custodial interrogation. Id. Petitioner further alleged that the February 18, 2008 statement must be suppressed as fruit of the poisonous tree. Id. The district court held a hearing on both claims and rejected them on the merits. Id. at 65-66.

A jury found Petitioner guilty on all counts. Id. at 67. The district court convicted Petitioner of first-degree premeditated murder and sentenced him to life imprisonment without the possibility of parole. Id.

Petitioner appealed his conviction to the Minnesota Supreme Court, arguing that the district court erred in denying his motion to suppress statements made to law enforcement because he had allegedly invoked his state and federal constitutional rights to remain silent and to have counsel present during custodial interrogation. Id. The Minnesota Supreme Court disagreed and found that Petitioner did not unequivocally invoke his right to counsel or his right to remain silent. Id. at 70, 71. The court affirmed Petitioner's convictions on June 1, 2011. Id. at 73.

On May 31, 2013, Petitioner filed a Petitioner for Post-Conviction Relief in the Dodge County District Court. See Respondent's Memorandum in Support of Motion to Dismiss Petitioner for Writ of Habeas Corpus ("Resp. App'x"), Ex. 1 (Petition for Post-Conviction Relief) [Docket No. 5-1]. Petitioner was represented by counsel. Id., p. 3. In support of his petition, Petitioner argued that since the date of his conviction, information had surfaced showing that Eric Bermea had recanted his testimony regarding Petitioner's involvement in Ulrich's death. Id., p. 2; see also Ortega v. State, 856 N.W.2d 98, 102 (Minn. 2014) ("Ortega II"). Petitioner filed an affidavit from Severo Ortega, Petitioner's grandfather and Eric Bermea's uncle. Resp. App'x, Ex. 1 (Affidavit of Severo Ortega in Support of Petition for Post-Conviction Relief dated May 28, 2013) [Docket No. 5-1]. In the affidavit, Severo stated that he had regular contact with Eric Bermea since the trial in 2009. Id., ¶ 4. Severo attested that Eric Bermea had told him that he regretted the way he testified and that he felt pressured to put more blame on

4

Petitioner than what really happened. Id., ¶ 5. In particular, Eric stated that Petitioner and Ortega Sr. did not fight with Ulrich and were acting in self-defense. Id. Additionally, Eric indicated that he felt pressured to testify that Petitioner was hitting Ulrich when, in fact, he did not see most of the fight. Id. Eric told Severo that he was afraid to personally recant his testimony for fear of going to prison. Id., ¶ 6. In a second affidavit by Severo that was submitted on behalf of Petitioner in support of his post-conviction petition, Severo restated his testimony from his first affidavit, and then added that Eric had first told Severo that he had lied in his trial testimony in February of 2012. Resp. App'x, Ex. 2 (Affidavit of Severo Ortega in Support of Petition for Post-Conviction Relief dated July 22, 2013) [Docket No. 5-2].

Petitioner also included an affidavit from Ortega Sr., in which he stated that if he had been allowed to testify at Petitioner's trial, he would have testified that Petitioner was not involved in Ulrich's death. Resp. App'x, Ex. 2 (Affidavit of Danny Ortega Sr. in Support of Petition for Post-Conviction Relief dated August 15, 2013), ¶ 7 [Docket No. 5-2]. Ortega Sr. attested that he fought with Ulrich after Ulrich had hit him. Id., ¶ 8. When Ortega Sr. realized Ulrich was not going to stop fighting, he took out his pocketknife and stabbed him multiple times in self-defense. Id. According to Ortega Sr., Petitioner did not stab Ulrich or contribute to his death in any way. Id., ¶ 10.

On November 25, 2013, the Dodge County District Court denied the petition without an evidentiary hearing. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition"), Appendix to Petition ("Pet. App'x") B (Findings of Fact, Conclusions of Law, and Order in Dodge County District Court case no. 20-CR-08-156), p. 4 [Docket No. 1-2]. The district court noted that Petitioner had

5

asserted a claim for ineffective assistance of counsel, but failed to allege any facts or law to support that claim. Id., p. 2. Consequently, the court found the claim barred under State v. Knaffla, 242 N.W.2d 737 (Minn. 1976). Id., pp. 2-3. The court also determined that the affidavits of Ortega Sr. and Severo Ortega were "self-serving" and not trustworthy. Id., p. 3. Additionally, the court found no admissible evidence that Eric Bermea was recanting his trial testimony. Id. Lastly, the court noted that there was "substantial corroboration at the trial of Petitioner's involvement in the crime, including but not limited to his own incriminating statements." Id.

Petitioner appealed the district court's decision to the Minnesota Supreme Court. As an initial matter, the court noted that even though the petition for postconviction relief included a claim that he was entitled to a new trial because of newly discovered evidence and ineffective assistance of trial counsel, Petitioner failed to make any arguments in support of those claims to the trial court or in his brief on appeal, and therefore, the claims were waived. Ortega II, 856 N.W.2d at 102 n. 4 (citations omitted). The court also found that Petitioner did not raise an argument that the affidavit of Ortega Sr. constituted newly discovered evidence or evidence of ineffective assistance of counsel. Id. at 102 n. 5. Accordingly, the court considered the affidavit "only to the extent that it corroborate[d] Eric's recantation." Id. Proceeding to the merits of Petitioner's claim, the court found that "Eric's allegedly false testimony was cumulative to other compelling evidence of [Petitioner's] guilt," and therefore, the court concluded that the outcome of Petitioner's trial would not have been different had Eric's testimony not been admitted. Id. at 105. The Minnesota Supreme Court affirmed the Dodge County District Court's denial of postconviction relief on November 19, 2014. Id.

On November 5, 2015, Petitioner filed the instant Petition for federal habeas relief, in which he asserted three grounds for relief:

**Ground 1**: Petitioner's confession was obtained without a valid waiver of his right to counsel and his right to remain silent, in violation of the Fifth and Sixth Amendments to the United States Constitution. Petition, p. 6.

**Ground 2**: (a) Petitioner's trial counsel was ineffective for failing to conduct a reasonable pre-trial investigation; (b) Petitioner's appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel; and (c) Petitioner's postconviction counsel was ineffective for "not [b]riefing the issue/claims." Id., p. 8.

**Ground 3**: The evidence was insufficient as a matter of law to support Petitioner's conviction for first-degree murder because the State did not prove beyond a reasonable doubt the element or burglary or premeditation. Id., p. 9.

On January 11, 2016, Respondent filed the instant motion to dismiss the Petition. In support of his motion, Respondent argued that, with the exception of Ground 2(c), all of Petitioner's claims were barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). Respondent's Memorandum of Law in Support of Motion to Dismiss Petition, pp. 6-7 [Docket No. 4]. According to Respondent, the one-year limitations period began to run 90 days from June 2, 2011 (i.e., August 31, 2011), and therefore, the period ended on August 31, 2012. Id., p. 8 (citing King v. Hobbs, 666 F.3d 1132, 1136 (8th Cir. 2012)). Petitioner filed the instant habeas Petition on November 13, 2015, well past the one-year limitations period. Id.

Further, even though the statute of limitations is tolled while a state postconviction petition is pending, Petitioner filed his state postconviction petition on

7

June 3, 2013, more than nine months after the limitations period expired. Id. (citations omitted). Thus, by the time Petitioner filed his state postconviction petition, there was no longer any limitations period to toll. Id.

Respondent also maintained that the factual predicates for Grounds 1, 2(a), 2(b), and 3 were known to Petitioner before or during his direct appeal. Id., pp. 8-9. Thus, 28 U.S.C. § 2244(d)(1)(D) did not apply in this case, and the latest triggering event for the limitations period was the finality of his direct appeal to the Minnesota Supreme Court. Id.

With respect to Ground 2(c), Respondent submitted that Petitioner did not raise a stand-alone claim of recanted testimony, but even if he had asserted such a claim, it would be untimely. Id., pp. 9-10. Respondent argued that Petitioner failed to meet his burden of demonstrating that he could not have discovered Eric Bermea's alleged recantation through due diligence on a timely basis. In fact, Petitioner offered no explanation for when he could have discovered the basis of such a claim, and the facts in the record suggested that Petitioner was aware of Eric's alleged recantation no later than February of 2012. Id., pp. 10-12 (citing Resp. Appx, Ex. 2, p. 6).

Further, Respondent asserted that equitable tolling should not apply in this case because, by filing the instant Petition, Petitioner demonstrated that he has the ability to file a habeas petition despite his education level. Id., pp. 12-13. As for Grounds 2(a) and 2(b), Petitioner did not allege that the conduct of his attorneys prevented him from filing his Petition within one year of the conclusion of direct review. Id., p. 13. In Respondent's view, Petitioner only asserted that he asked his trial and appellate

counsel to raise issues; he did not ask them to file a timely federal habeas petition. Id. (citing Cordle v. Guarino, 428 F.3d 46, 48-49 (1st Cir. 2005)).

With regard to Ground 2(c), Respondent maintained that a claim of ineffective assistance of postconviction counsel does not implicate a federal constitutional right, and therefore, Petitioner was not entitled to relief on this claim. Id., pp. 13-14 (citations omitted).

In addition, Respondent submitted that Ground 2 was procedurally defaulted because Petitioner never raised a claim of ineffective assistance of trial counsel in his direct appeal and did not raise a claim of ineffective assistance of appellate counsel in his petition for postconviction relief. Id., pp. 15-16. Because Petitioner could have raised these claims in state court, but failed to do so, they are barred under Knaffla. Id., p. 16. Moreover, Petitioner's ineffective assistance of trial counsel is barred by Minn. Stat. § 590.01, subd. 1, and his ineffective assistance of postconviction counsel claim is barred by the fact that he did not have a constitutional right to effective counsel in postconviction proceedings. Id., pp. 16-17 (citations omitted).

Lastly, Respondent contended that Petitioner could not establish "cause and prejudice" to excuse his procedural default, as Petitioner had not shown that any of his claims would have had merit on appeal, nor could he demonstrate that he was prejudiced by any errors of his appellate attorney. Id., p. 17. Respondent noted that Petitioner's appellate counsel raised the constitutionality of his statement made to law enforcement, but the Minnesota Supreme Court held that the most compelling evidence of Petitioner's guilt came from his admissions about premeditating Ulrich's murder. Id.,

pp. 17-18 (citing Ortega II, 856 N.W.2d at 105). Thus, any issues Petitioner raised on appeal would not have resulted in a new trial. Id., p. 18.

Petitioner did not file any response to Respondent's memorandum.

## II.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners. AEDPA provides that a district court may entertain a habeas petition submitted by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

### A.   **Grounds 1, 2(a), 2(b) and 3 are Barred by AEDPA's One-year Statute of Limitations**

The AEDPA provides the following with respect to the statute of limitations on habeas petitions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244 (d)(2).

If a prisoner chooses not to seek direct review of the State court judgment in the United States Supreme Court, the conviction becomes final when the time for filing a certiorari petition expires.  Jimenez v. Quarterman, 555 U.S. 113, 119 (2009).  Thus, "[i]f the Supreme Court has jurisdiction to review the direct appeal, the judgment becomes final ninety days after the conclusion of the prisoner's direct criminal appeals in the state system."  King, 666 F.3d at 1135 (citation omitted); see also S. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment.").

In this case, the Court finds that Grounds 1, 2(a), 2(b) and 3 are barred by AEDPA's one-year statute of limitations.  Petitioner's direct appeal to the Minnesota Supreme Court was decided on June 1, 2011.  See Ortega I, 798 N.W.2d 59 (Minn. 2011).  Petitioner did not file a petition for writ of certiorari in the United States Supreme Court.  Consequently, Petitioner's conviction became final 90 days from June 1, 2011—or approximately August 31, 2011.  The statute of limitations period ended one year later on or about August 30, 2012.

Petitioner's application for state postconviction relief was not filed until May 31, 2013, well over a year from the date of final judgment on direct review.  Thus, even

11

though the statute of limitations is tolled during the pendency of state postconviction review, the one-year time period had already expired before Petitioner filed his state postconviction petition. See Jackson v. Ault, 452 F.3d 734, 735 (8th Cir. 2006) ("The one year AEDPA limit for federal habeas filing cannot be tolled after it has expired.") (citation omitted); Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003) ("Because the deadline for filing Curtiss's federal petition passed on April 13, 2000, his later filing for post-conviction relief in state court cannot act to toll the federal statute of limitations.") (citation omitted).

For all of these reasons, the Court concludes that Ground 1, 2(a), 2(b) and 3 are time-barred and should be dismissed.[1]

### B.    Ineffective Assistance of Postconviction Counsel

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension"); 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

It has been consistently held that there is no constitutional right to effective assistance of counsel in postconviction proceedings. Lopez-Lopez v. Sanders, 590

---

[1] Petitioner has not asserted that equitable tolling applies, and there is nothing before the Court to suggest that Petitioner was prevented from filing his federal habeas Petition within the one-year period.

F.3d 905, 907 (8th Cir. 2010) (citations omitted); <u>Finch v. Miller</u>, 491 F.3d 424, 427 (8th Cir. 2007) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-54 (1991)); <u>Clay v. Bowersox</u>, 367 F.3d 993, 1005 (8th Cir. 2004) (citation omitted).  Accordingly, Petitioner's claim of ineffective assistance of postconviction counsel is not cognizable on federal habeas review.[2]  Ground 2(c) should therefore be dismissed.

In sum, the Court finds that all of the grounds asserted in the Petition should be dismissed.

### III.   RECOMMENDATION

For the reasons set forth above, and based upon all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

---

[2]   The Court notes that even though the ineffective assistance of counsel claim was based on postconviction counsel's alleged failure to raise a claim of newly discovered evidence, Petitioner has not raised a freestanding claim for newly discovered evidence in the instant habeas Petition.

However, even if Petitioner had raised a claim of newly discovered evidence, this Court would find that such a claim must be dismissed because it was not exhausted.  It is well established that a federal court cannot entertain a petition for a writ of habeas corpus on behalf of a state prisoner unless the prisoner has first exhausted all available state-court remedies as to each of his claims.  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982).  A federal claim is deemed to be unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process.  <u>O'Sullivan</u>, 526 U.S. at 845.  Here, because Petitioner never asserted a claim of newly discovered evidence in his petition for state postconviction relief or in his appeal to the Minnesota Supreme Court, the claim was not exhausted.  Further, because Petitioner has already completed direct and postconviction review of his conviction in state court, any attempt to assert a claim of newly discovered evidence now would be deemed to be procedurally defaulted and there is no evidence to suggest that the default should be excused.

1. Petitioner Danny Ortega, Jr.'s Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus [Docket No. 1] be **DENIED**.

2. Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [Docket No. 3] be **GRANTED**.

3. This matter be DISMISSED WITH PREJUDICE.


Dated:   July 1, 2016               *s/ Janie S. Mayeron*
                                    JANIE S. MAYERON
                                    United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 18, 2016**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this Rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.